IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **JOHN KRIS MORRIS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | CIVIL ACTION NO. _____ |
| ) | |
| **SEQUA CORPORATION,** ) | |
| **d/b/a PRECOAT METALS,** ) | |
| ) | |
| **Defendant.** ) | |

## I. NATURE OF THE CASE

1. This is an action brought by the plaintiff, John Kris Morris. (hereinafter "Morris"), who has been affected by the discrimination alleged in the claims set forth below, seeking permanent relief from unlawful discriminatory practices by Sequa Corporation d/b/a Precoat Metals involving termination and other terms and conditions of employment on the basis of a perceived disability. The practices committed by the defendant violate the Americans With Disabilities Act of 1990, as amended, 42 U.S.C. §12101, et seq.

Plaintiff also alleges Alabama state law negligence claims.

1

## II. JURISDICTION

2. This suit is authorized and instituted pursuant to the Americans With Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, et seq. (hereinafter referred to as "ADA"). Supplemental jurisdiction of the Court for the state law claims in Count II is based on 28 U.S.C. §1367.

3. Defendant, Sequa Corporation, d/b/a Precoat Metals (hereinafter "Precoat") is a for profit corporation doing business within this judicial district and division and employs more than fifty (50) persons and otherwise meets the jurisdictional prerequisites of the ADA.

4. Plaintiff has fulfilled all conditions precedent to the institution of this action under the ADA. Plaintiff filed a charge for disability discrimination and retaliation with the United States Equal Employment Opportunity Commission (hereinafter "EEOC"), on April 3, 2009. (Attached as Exhibit A)

5. The EEOC Notice of Right to Sue letter to plaintiff, informing the plaintiff of his right to file suit against the defendant, was signed and sent by regular U.S. Mail on October 7, 2010. (Attached as Exhibit B)

6. Plaintiff timely files this action within ninety (90) days of receipt of his Notice of Right to Sue from the EEOC.

7. Subject matter jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 12101, et seq..

8. The jurisdiction of this court is invoked to secure protection for, and to redress the deprivation of rights secured by the above statutes, which provide injunctive and other relief for discrimination in employment due to a perceived disability within the meaning of the ADA.

### III. VENUE

9. This action is brought within the state wherein the unlawful employment practices were committed, making venue proper under 28 U.S.C. § 1391(b)(2) and 42 U.S.C. § 12101, et seq.

10. Venue is proper in the Southern Division of said Northern District of Alabama in that Defendant transacts business in the Southern Division of the Northern District of Alabama, plaintiff resides in the Southern Division, and the acts forming the basis for this Complaint occurred in the Southern Division.

### IV. PARTIES

11. Plaintiff, John Kris Morris, was more than 19 years old at the time of the events in question, and is a resident of the State of Alabama, and of this judicial district, and a citizen of the United States.

12. Plaintiff worked for the defendant Precoat, for more than one year. Plaintiff is an "eligible employee" within the meaning of the meaning of the ADA.

13. Defendant, Precoat is a for-profit corporation doing business within this judicial district and division. Precoat is an employer within the meaning of the ADA in that it is engaged in industry affecting interstate commerce and has

3

employed, at all relevant times, a requisite number of persons to qualify as an employer under the Act.

## IV. STATEMENT OF FACTS

14. Plaintiff, Morris, was initially employed by Precoat in July 2007 as a full time coater, and worked in this job at all times material hereto while employed by Precoat.

15. A few years prior to plaintiff's employment with Precoat, he had brain surgery, and as a result, he has had to take the medication methadone to prevent headaches and fluid build up.

16. This medication did not affect plaintiff's ability to do any of the job related functions of his job as a coater.

17. Plaintiff did not require any accommodations to do his job.

18. Plaintiff had been taking this medication for years, and he did not pose a threat to the health or safety of those in the workplace.

19. Plaintiff always performed his job at Precoat safely.

20. On or about June 13, 2008, Morris was called into a meeting at work and told he had to take a drug test.

21. The result of Morris' drug test was negative (clean) for drugs.

22. A few days later, Precoat asked Morris to take another test, but this time the request was for a hair sample based drug test.

23. Morris asked Precoat management what they were looking for because he knew he did not take illegal drugs, but that he was taking prescription medication, which he understood would not show up in a drug test.

24. Morris explained to Precoat management why he had to take the methadone medication, which was to prevent headaches and fluid build up.

25. Morris offered to bring a copy of his prescription to Precoat management for their doctor to review, if needed.

26. Morris told Precoat management that the medication did not affect his ability to perform his job, as demonstrated by his job performance.

27. On, or about, June 26, 2008, Morris brought in his prescription medication to Precoat management, and at that time Morris was told to go home until Precoat's doctor cleared him for work.

28. Morris went home to wait for Precoat's doctor to clear him for his return to work.

29. Morris was also told that Precoat's doctor would be consulting with his doctor.

30. Morris did not hear anything from Precoat about returning to work, so he went to his doctor, and asked him if anyone from Precoat had contacted him.

31. Morris' doctor told Morris that he had not been contacted by anyone from Precoat.

32. Morris' doctor then called Precoat's doctor and told Precoat's doctor that there was no reason why Morris could not return to work, as usual, with no restrictions.

33. Morris then tried contacting Precoat's Human Resource Department through email and telephone messages, which is how he had been communicating with Precoat's Human Resource Department during his forced leave of absence, regarding when he could return to work.

34. On or about August 20, 2008, Adriane Louie, Precoat's Human Resource Manager, who Morris had been communicating with, sent him an email, which stated she would follow up with Precoat's doctor.

35. Louie told Morris that she was the only one Morris could talk to or deal with about getting the okay to return to work.

36. Morris continued to try and contact Louie about when he could return to work at Precoat, but he had to leave messages, or he was told she would get back with him, which Louie never did.

37. In January 2009, Morris' health insurance was canceled, but he was not notified of the cancellation, and he did not discover it until he tried to fill a prescription in February 2009.

38. Upon learning his insurance had been canceled, Morris contacted Louie to try to find out why it had been canceled, and for the first time, he was told by

Louie, that he was considered a no call no show, and his employment with Precoat had been terminated.

39. Morris had been in regular communication, with Louie, through email and telephone calls, about when he could return to work, but he was never given the approval by Louie to return to work, but was consistently told by Louie that she would have to get back with him.

40. Documents received from the EEOC reveal that Precoat claims a letter regarding Morris' employment was sent to him by regular U.S. Mail on August 22, 2008.

41. Morris never received the above letter.

42. Notably, a previous letter mailed from Precoat to Morris in July 2008 regarding his employment was sent by certified mail, and Morris responded to that letter immediately upon receipt.

43. The letter dated August 22, 2008, allegedly mailed to Morris, stated, "[s]ince you [Morris] have been away from work 30 days or more you [Morris] may be required to take a return to work physical but I [Louie] will find out."

44. The letter also stated, ". . . if I [Louie] do not hear from you [Morris] I [Louie] will assume that you [Morris] have abandoned your [Morris] job. Please contact me [Louie] within the next seven (7) days."

45. Morris had been in regular email and telephone communication with Louie about when he would be allowed to return to work, since his forced leave from June 2008 through February 2009, which is when he found out his insurance was canceled in January 2009.

46. At no time during these many communications, between Louis and Morris, from June 2008 to January 2009, did Louie tell Morris that his employment had been terminated or that he was in danger of being terminated, nor did she mention anything about the purported August 22, 2008 letter.

47. The reason given by Precoat for Morris' termination was a pretext for terminating Morris due to his perceived disability.

48. While employed by Precoat, Morris had health and long term disability insurance coverage benefits.

49. In February 2009 Morris was disabled in an automobile accident.

50. As a result of the actions of Precoat, Morris has lost pay and insurance benefits, incurred debt, suffered mental anguish and emotional distress, and suffered other injury.

## COUNT I.

## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT INCLUDING RETALIATION

51. Plaintiff adopts and re-alleges each and every allegation contained in this Complaint as if set out herein, anew.

52. The plaintiff was perceived as having a disability, which substantially limits a major life activity.

53. The plaintiff and plaintiff's doctor clearly communicated with defendant that plaintiff was willing and able to return to work with no restrictions or accommodations, and would not pose a threat to the health or safety of those in the workplace.

54. Defendant Precoat negligently, recklessly, wantonly, and/or intentionally violated the Americans with Disabilities Act by forcing plaintiff to take an unnecessary leave of absence due to a perceived disability, and then failing to permit the plaintiff to return to work, even after Morris provided defendant with a note from his doctor, which stated Morris was capable to do any type of work without limitation.

55. Plaintiff was regarded as having a disability as defined by the Americans with Disabilities Act of 1990, 42 U.S.C. §12112(a), in that (a) he has a physical impairment; (b) he has a record of such impairment; and (c) he is regarded as having such an impairment.  His employer failed to allow him to continue working as required under the ADA, and ultimately terminated his employment because he was regarded as having a disability, in violation of the ADA.

56.     Defendant Precoat retaliated against the plaintiff because as soon as Precoat found out plaintiff was taking medication, for his prior brain surgery, plaintiff was sent home, and Morris notified the defendant that he did not have a disability or need any accommodations, and plaintiff was willing and able to return to work, but Precoat terminated Morris after he complained about not being allowed to return to work because Precoat regarded Morris as having a disability.

57.     As a proximate consequence of the violations of the ADA by the defendant, plaintiff has suffered and will continue to suffer: damage to his professional life and future career opportunities, past and future pecuniary losses, emotional pain, inconvenience, mental anguish, loss of enjoyment of life, and non-pecuniary damages.

58.     Plaintiff has satisfied all administrative prerequisites to bringing this claim.

WHEREFORE, PREMISES CONSIDERED, plaintiff demands the following relief:

(a)     Placement in the position in which he would have worked absent the defendant's discriminatory treatment, or, in the alternative, front pay for the years he would have worked absent defendant's discriminatory treatment;

(b)     All back pay from the date of his wrongful termination and salary increases;

(c)     All salary increases, which he was denied;

(d)     Compensatory damages for loss of wages, loss of benefits, pain and suffering, mental anguish, emotional distress, embarrassment, both past and future, loss of reputation;

(e)     Punitive damages to deter such conduct in the future;

(f)     Pre-judgment interest;

(g)     Attorney's fees;

(h)     Costs;

(i)     Such other legal or equitable relief as may be appropriate to effectuate the purposes of the ADA or to which he may be entitled.

## COUNT II.

## NEGLIGENCE

59.     Plaintiff adopts and re-alleges each and every allegation contained in this Complaint as if set out herein, anew.

60.     After the plaintiff was forced to take a leave of absence he tried repeatedly to get someone in the defendant's human resource department to tell him when he could return to work.

61.     Defendant led the plaintiff to believe that he was still employed by it through a series of communications between its employee agent Louie and the plaintiff about trying to find out when he could return to work and by the defendant's

continuing to pay the plaintiff's insurance for months after his employment was terminated.

62. After months of repeated efforts by the plaintiff via phone and e-mail communications to try to get the defendant's human resource department to tell him when he could return to work, defendant maintained at the EEOC that it had sent a letter by regular U.S. Mail to the plaintiff stating that he might need to have a physical and would be terminated if he did not contact defendant's Louie back within the next seven days.

63. The defendant never contacted the plaintiff via their usual methods of communication to see if the plaintiff had received such a letter, or why he had not responded to such a letter.

64. The plaintiff never received such a letter.

65. Defendant Precoat had a duty to inform the plaintiff that his employment would be terminated if he did not contact Louie within the next seven days.

66. The defendant breached the above duty when it failed to inform the plaintiff that his employment would be terminated if he did not contact Louie within the next seven days.

67. Defendant's breach of its duty proximately caused the damages sustained by the plaintiff as a result of the loss of his job with the defendant.

WHEREFORE, PREMISES CONSIDERED, plaintiff demands the following relief:

(a)   Compensatory damages for loss of wages, loss of benefits, pain and suffering, mental anguish, emotional distress, embarrassment, both past and future, loss of reputation;

(b)   Punitive damages to deter such conduct in the future;

(c)   Pre-judgment interest;

(d)   Such other legal or equitable relief as the plaintiff may be entitled.

Respectfully submitted,

/s/ Thomas F. Talty

Thomas F. Talty
Attorney for Plaintiff
2015  1st Avenue North
Birmingham, Alabama 35203
TEL: (205) 458-1111
e-mail: taltylaw@bellsouth.net

**PLAINTIFF DEMANDS TRIAL BY A STRUCK JURY ON ALL CLAIMS SO TRIABLE.**

**PLEASE SERVE DEFENDANT SEQUA CORPORATION, d/b/a PRECOAT METALS BY CERTIFIED MAIL RETURN RECEIPT REQUESTED:**

Defendant's address:

Sequa Corporation
c/o C T Corporation System
2 North Jackson Street, Suite 605
Montgomery, AL  36104